The Law Offices of Avrum J. Rosen, PLLC
Attorneys for 6777 LLC
38 New Street
Huntington, New York 11743
Avrum J. Rosen
(631) 423-8527

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

830 E. 163 ST. CORP.,                                    Chapter 11
                                                         Case No.: 10-22385-rdd

                            Debtor.
----------------------------------------------------------x

# DISCLOSURE STATEMENT FOR THE
# PLAN OF REORGANIZATION FILED BY 6777, LLC

    This Disclosure Statement ("Disclosure Statement") is being provided by 6777 LLC ("Plan Proponent" or "6777 LLC"), a secured creditor of the Debtor and Debtor-in-Possession 830 E. 163 Street Corp., (the "Debtor") and a party in interest in this chapter 11 case, the proponent of the within Chapter 11 Plan of Reorganization ("Plan Proponent"), by its counsel, The Law Offices of Avrum J. Rosen, PLLC, pursuant to the requirements of Section 1125(f)(3) of the Bankruptcy Code (the "Bankruptcy Code"), to those known holders of a claim or interest who are entitled to vote on the confirmation of the Plan of Reorganization (the "Plan") proposed by the Plan Proponent in order to disclose adequate information, deemed to be material, important and necessary for the Debtor's creditors ("Creditors") to make an informed judgment and an informed decision in exercising their right to vote on the Plan.

    Along with this Disclosure Statement, you will receive a copy of the proposed Plan, a Ballot and a Notice fixing a date for a hearing on the confirmation of the Plan. Annexed to this Disclosure Statement or available on-line at the Court's electronic website www.nysb.uscourts.gov are the following exhibits:

    Exhibit "A":   Plan Proponent's Plan of Reorganization;
    Exhibit "B":   Copies of the schedules of creditors filed by the debtor;
    Exhibit "C":   Claims register on file with the United States Bankruptcy Court.
    Exhibit "D":   Monthly Operating Report for the Period November 1, 2010
                   to November 30, 2010.

    The Bankruptcy Court has not yet scheduled a hearing on confirmation of the Plan. The date, time and place of the hearing will be found in the "Notice Fixing a Date for a Hearing on

Confirmation,ö which accompanies this notice.  The Creditors may vote on the Plan by completing and mailing the enclosed ballot to the attorneys for the Plan Proponent, The Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743. Please see Part XII for an explanation of the voting process and Confirmation of the Plan.

In order for the Plan to be accepted and thereafter confirmed, ("confirmation"), at least two-thirds (2/3) in amount and more than one-half (½) in number of allowed claims of each class of creditors who vote and who are impaired under the Plan must cast their vote for the acceptance of the Plan.   A CREDITOR WHO DOES NOT VOTE FOR THE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT COUNT IN THE OUTCOME OF THE PLAN'S ACCEPTANCE.

Under the proposed Plan, Classes 4, 6, and 7 are  impaired.  Class 6 is impaired is not entitled to vote on the Plan as it is made up of the equity holders of the Debtor or insiders of the Debtor.

**THIS DISCLOSURE STATEMENT IS THE ONLY AUTHORIZED STATEMENT WITH RESPECT TO THE PLAN.  NO OTHER REPRESENTATIONS CONCERNING THE DEBTOR, ITS OPERATIONS OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN OR INCONSISTENT WITH THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY ORDER OF THE BANKRUPTCY COURT.  SUCH APPROVAL BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE PLAN'S MERITS.**

The Plan Proponent and its counsel have prepared the Chapter 11 Plan and submit that this Plan is in the best interest of Creditors generally and recommend acceptance of the Plan by those Creditors who vote.  It is the belief of the Plan Proponent that if the Plan is denied confirmation, unsecured Creditors will receive less than they will receive under the Plan. This Disclosure Statement has been conditionally approved by the Court  as containing information of a kind and in sufficient detail that will enable Creditors to make an informed judgment about the Plan, and the Plan Proponent has been authorized to use this Disclosure Statement in connection with the solicitation of ballots on the Plan.  At a hearing on confirmation the Court will consider whether the Plan is feasible, and whether it is in the best interests of the Creditors.

PART I
**DEFINITIONS**

For the purposes of this Disclosure Statement, the terms used herein shall be defined as they are defined in the Plan Proponent's Plan of Reorganization.

## PART II
## PRELIMINARY STATEMENT

On March 3, 2010, the debtor filed a petition pursuant to Chapter 11 of Title 11 of the United States Code. The debtor is a debtor-in-possession, no committee of unsecured creditors has been appointed, nor has any operating trustee been appointed.

## PART III
## RETENTION OF PROFESSIONALS

By Amended Order dated April 30, 2010, the Debtor retained Shafferman & Feldman LLP, as counsel to the Debtor. By Order signed on June 22, 2010 and entered on June 24, 2010, the Court granted the Debtor's application to employ David Stich, Esq., as special litigation and real estate counsel to the Debtor. On July 6, 2010, an application was filed by Debtor to employ Gold & Rosenblatt as special Landlord-Tenant counsel to the Debtor. An order with respect to that application has not been entered by the Court.

## PART IV
## REPRESENTATIONS AND SCOPE OF STATEMENT

The information contained herein has not been subject to a certified audit, and accordingly, the Plan Proponent is unable to warrant or represent that the information contained herein is without any inaccuracies. The Plan Proponent believes that the information contained herein is accurate and has verified its accuracy to the extent possible.

## PART V
## DESCRIPTION OF THE DEBTOR AND ITS BUSINESS

According to the undated Affidavit Pursuant to Local Bankruptcy Rule 1007-2 of Charles Plummer, as President of the Debtor filed with the Court on March 3, 2010, the Debtor is in the real estate business owning and operating real property known and located at 830 East 163rd Street, Bronx, New York 10456 (the "Premises"). The filing was purportedly "necessitated by cash flow problems caused by the recent problems besetting the nation's economy and the need to preserve the Debtor's assets." Prior to the filing, the Debtor's largest secured creditor JP Morgan Chase Bank had commenced a foreclosure action against the Debtor entitled *JP Morgan Chase Bank, N.A., Plaintiff, v. 830 E. 163 St. Corp., New York State Dept. Of Finance, NYC Dept. Of Finance, Charles E. Plummer, Worker's Compensation Board of the State of New York, Commissioner of Labor, NYC Environmental Control Board, "John Doe No. 1" to "John Doe No. XXX", Defendants*, Index No.: 381343/09, pending in the Supreme Court of the State of New York, County of the Bronx (the "State Court Action"). A receiver had been appointed in connection with the State Court Action. The Plan Proponent has acquired the Mortgage covering the Property by assignment from JP Morgan Chase Bank to the Plan Proponent.

# PART VI
## EVENTS DURING THE CHAPTER 11 CASE

On May 21, 2010, the Debtor filed a motion to extend the Debtor ninety (90) day period to file a plan of reorganization or commence making payments in an amount equal to interest to JP Morgan Chase, N.A. By Order dated May 21, 2010, the Court scheduled a hearing on the motion for June 8, 2010. By Bridge Order dated June 14, 2010, the Court further extended the time the Debtor has to file a plan of reorganization or commence making payments in an amount equal to interest to JP Morgan Chase, N.A. A further Bridge Order was signed on June 21, 2010. No additional Bridge Orders were sought and the Debtor's exclusive period to file a plan of reorganization expired.

On July 7, 2019, the Debtor entered into a Stipulation and Consent Order with JP Morgan Chase authorizing the Debtor to use cash collateral and provide adequate protection and related relief. On August 13, 2010, the Debtor filed a motion to approve the Debtor's use of cash collateral and by Order dated September 27, 2010, the Debtor was authorized to continue the use of cash collateral in accordance with the Stipulation. A further Order has been negotiated and will be submitted, extending the use of cash collateral to Mach 31, 2011. No further orders were entered authorizing the Debtor's continued use.

The Monthly Operating Report for the period from November 1, 2010 to November 30, 2010 has been filed by the Debtor. The Debtor is operating at a loss in the amount of $18,599.11 per month. The Debtor did not file a Plan of Reorganization nor did it further extend its time to exclusively file a Plan. As such, the Plan Proponent has filed a Plan of Reorganization that proposes an auction sale of the Premises.

An adversary proceeding was commenced by the Debtor against the City of New York Department of Environmental Protection ("DEP") under Adv. Proc. No.: 10-8355 seeking injunctive relief restraining DEP from selling its lien against the Debtor's premises for unpaid water and sewer charges. An Order to Show Cause was signed on April 29, 2010 scheduling a hearing on the Debtor's motion for a temporary restraining order and preliminary injunction. DEP was temporarily restrained from selling its lien pending such hearing. By Stipulation and Order, the parties resolved the Order to Show Cause and discontinued the adversary proceeding. DEP withdrew its "30 Day Notice of Intention to Sell Water Liens".

# PART VII
## DESCRIPTION OF THE PLAN

THIS PART PRESENTS ONLY A SUMMARY OF THE PLAN OF REORGANIZATION PROPOSED BY THE PLAN PROPONENT. CREDITORS ARE URGED TO READ THE PLAN IN FULL AND TO CONSULT WITH COUNSEL AS TO ITS CONTENT. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND HIS CREDITORS.

### CLASSIFICATION OF CLAIMS AND INTERESTS

The Allowed Claims against the Debtor are divided into the following classes:

Statutory Claims;
Allowed Administration Claims;
Class 1 - Allowed Secured Claim of New York State
 Department of Taxation and Finance
Class 2- Allowed Secured Claim of New York City Water Board
Class 3- Allowed Secured Claim of City of New York Housing
 Preservation and Development
Class 4 - Allowed Secured Claim of 6777 LLC;
Class 5 - Allowed Unsecured Priority Claims;
Class 6 - Allowed Unsecured Claims;
Class 7 ó Equity Claim of the Shareholder of the Debtor.

## TREATMENT OF CLAIMS

## STATUTORY CLAIMS

The claim of the United States Trustee, pursuant to 28 U.S.C. § 1930(a)(6) including all outstanding quarterly fees and any applicable interest owed to the Office of the United States Trustee, shall be paid in full on the Effective Date of the Plan. In addition, the Debtor shall continue to incur and pay quarterly fees and any applicable interest until the entry of the õFinal Decreeö or dismissal or conversion, whichever comes first. Unpaid United States Trusteeøs fees accrue interest that is an expense of the Estate. The Plan Proponent shall comply with the reporting requirements of the office of the United States Trustee until the entry of a Final Decree and shall file quarterly reports on January 15, April 15, July, 15 and October 15 of each year until entry of a Final Decree.

## ADMINISTRATIVE CLAIMS

Upon the distribution date, or as soon thereafter as is practicable (and if such claim is for professional fees or expenses, upon a determination by the Court that such fees are reasonable and allowable), each holder of an allowed administration claim shall be paid in cash in full in amount equal to 100% of each such allowed claim. New York State Department of Taxation and Finance has filed an administrative claim for post-petition tax liability due in the sum of $1,000.00. This class is not impaired and is not entitled to vote.

## CLASS 1-SECURED CLAIM OF NYS DEPT. OF TAXATION AND FINANCE

Class 1 consists of the secured claim of New York State Department of Taxation and Finance which filed a third amended pre-petition proof of claim in the secured amount of $25,088.20. The

Plan Proponent reserves the right to object to this claim The Successful Bidder shall pay the full amount of the allowed secured claim over period of sixty (60) months from the Filing Date in equal monthly payments plus statutory interest, or may at its election pay these claims on or after the Effective Date. This Class is not impaired and is not entitled to vote.

### CLASS 2-SECURED CLAIM OF NYC WATER BOARD

Class 2 consists of the secured claim of the New York City Water Board which filed a secured claim in the amount of $158,742.66. The Plan Proponent reserves its rights to object to this claim. The Successful Bidder shall pay the full amount of the allowed secured claim over period of sixty (60) months from the Filing Date in equal monthly payments plus statutory interest, or may at its election pay these claims on or after the Effective Date. This Class is not impaired and is not entitled to vote.

### CLASS 3-SECURED CLAIM OF NYC HPD

Class 3 consists of the secured claim of the City of New York Housing Preservation and Development which filed a secured claim in the amount of $4,095.10. The Plan Proponent reserves its rights to object to this claim. The Successful bidder shall pay the full amount of the allowed secured claim over period of sixty (60) months from the Filing Date in equal monthly payments plus statutory interest, or may at its election pay these claims on or after the Effective Date. This Class is not impaired and is not entitled to vote.

### CLASS 4-ALLOWED SECURED CLAIM OF 6777 LLC

Class 4 consists of the allowed secured claim of 6777 LLC, the Plan Proponent herein, assignee and transferee of JP Morgan Chase Bank NA which filed a proof of claim in the amount of $2,657,770.44 plus accrued interest, default interest, attorneys' fees and other charges in the total amount of $2,822,355.41. 6777 LLC shall initially credit bid $2,800,000.00 of its claim pursuant to 11 U.S.C. § 1129(b)(2)(A)(ii) and § 363(k) and assuming that it is the successful bidder as defined above, title to the Premises shall be transferred to 6777 LLC or its designee, subject to its mortgage and the tax liens in partial satisfaction of its secured claim, in addition to the unsecured creditor Carve Out. In the event that the Plan Proponent is not the successful bidder, then the allowed secured claim of 6777 LLC shall be paid in full out of proceeds of sale. This class is impaired and is entitled to vote.

### CLASS 5-ALLOWED UNSECURED PRIORITY CLAIMS

Class 5 consists of allowed unsecured priority claims. New York State Department of Taxation and Finance filed a third amended pre-petition priority proof of claim in amount of $889.09. New York State Department of Labor filed a priority claim in the amount of $1,657.13. Department of Finance filed a priority claim in the amount of $463.98. New York State Department of Labor filed a priority claim in the amount of $1,858.89. The Internal Revenue Service filed a priority proof of claim in the amount of $7,195.29. New York City Department of Finance filed a priority claim

in the amount of $3,099.80. Allowed Priority Claims will be paid over a period of sixty (60) months from the Filing Date in equal monthly payments plus statutory interest, or may at its election pay these claims on or after the Effective Date. This class is not impaired and is not entitled to vote.

### **CLASS 6-ALLOWED GENERAL UNSECURED NON-PRIORITY CLAIMS**

Class 6 consists of allowed general unsecured non-priority pre-Petition claims. These include claims for which proofs of claim have been filed and claims which were listed in the Debtor's schedules. Two of these claims are listed by the Debtor as disputed and are indicated in the summary of claims below. The Plan Proponent shall contribute up to $25,000.00 which amount shall be carved out of its secured claim in order to pay all Allowed General Unsecured claims a *pro rata* distribution on the Effective Date up to 100% of their claims without interest. In the even that there is a deficiency in the auction sale at which the Plan Proponent is the successful bidder, resulting in a bifurcated claim for the Plan Proponent, then the Plan Proponent shall waive payment of any unsecured portion of its claim. To the extent that there are surplus funds after payment of Class 1 to 4 creditors out of proceeds of sale, then the unsecured creditors shall share the balance of the proceeds of sale *pro rata* on the Distribution Date and on subsequent Distribution Dates as funds become available. This class includes the claims of New York City Department of Environmental Protection, New York City Department of Taxation and Finance and New York State Workers' Compensation Board, each of which filed secured proofs of claim for which there will be no equity for the claim to attach to. The Plan Proponent reserves the right to object to all claims. This class is impaired.

| CREDITOR | NATURE OF CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT |
|---|---|---|---|---|---|
| Consolidated Edison | Goods Sold | | | | $3,291.00 |
| Hess Corporation | Vendor | | | | $5,833.46 |
| Internal Revenue Service | | | | | $29,864.40 |
| NYC DEP | 8/10/07-3/03/09 | | | x creditor filed secured claim | $158,742.66 per proof of claim filed |
| NYC Dept. Of Finance | | | | creditor filed secured claim | $4,508.98 |
| NYS Dept. Of Tax and Finance | | | | | $9,100.00 |
| NYS Workers' Compensation Board | | | | x creditor filed secured claim in amount of $66,000 | $176,500.00 per proof of claim filed |

|  |  |  |  | and balance as unsecured |  |
|---|---|---|---|---|---|

**$387,840.50**

## CLASS 7- EQUITY SECURITY HOLDERS

Class 7 consists of the allowed claim(s) of the shareholder(s) of the Debtor. There are five (5) equity security holders of the Debtor, each of whom, according to the List of Equity Security Holders filed by the Debtor, hold a 20% interest in the Debtor: (1) Carole Handchard; (2) Charles Plummer; (3) Cynthia Plummer Short; (4) Nathan Plummer; and (5) Robert Plummer. The shareholders shall not retain their interests in Debtor and shall receive no distribution unless all other classes are paid in full with interest. This class is impaired but is not entitle to vote under the Plan. This Class is presumed to have rejected the Plan.

## PART VIII
## MEANS FOR EXECUTION OF THE WITHIN PLAN

The Premises shall be sold at an auction sale to be held at the United States Bankruptcy Court for the Southern District of New York pursuant to 11 U.S.C. § 1123(a)(5)(B) and (D). The sale shall be held on the same date as the hearing on confirmation of the within Plan ("Confirmation and Sale Hearing") pursuant to the terms of sale and bidding procedures contained herein.

Seller is 830 E. 163 St. Corp., a corporation which is the Debtor in this chapter 11 case.

Premises for Sale: 830 East 163 Street, Bronx, New York. Conveyance is in "all as presently exists" in "as is" "where is" condition "with all faults" together with all accumulated cash and assignment of all tenant security deposits.

Purchase Price: Sale to be held at auction pursuant to 11 U.S.C. § 1123(a)(5)(B) and (D) with secured creditor 6777 LLC permitted to exercise its right to credit bid pursuant to 11 U.S.C. § 1129(b)(2)(A)(ii) and § 363 (k). Initial bid to be not less than the total of secured claims filed of record.

Broker - None.

Adjustments - None.

Conditions of Closing This sale is expressly subject to Bankruptcy Court approval pursuant to an order confirming the within Plan and auction sale of the Premises ("Confirmation and Sale Order") and is subject to higher and better bids to be received at the Confirmation and Sale Hearing.

8

Closing to be scheduled within 10 days of the entry of the Confirmation and Sale Order, which closing shall be held at the offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743.

Applicable Law is the law of the State of New York.

Risk of Loss is the sellers until the date of closing.

**Terms and Conditions of Sale:**

(a) As a condition to making an offer at the Confirmation and Sale Hearing, and in order to become a qualified bidder ("Qualified Bidder"), unless modified or waived by the Court, each interested party, other than the Plan Proponent, must tender a deposit to Law Offices of Avrum J. Rosen, PLLC, attorneys for the Debtor, by certified or bank check, a sum of not less than $300,000.00 representing approximately 10% of the total secured claims superior in priority to 6777 LLC's mortgage and the full amount of that mortgage against the Premises to be held in escrow until closing, at which time such payments shall be credited to the agreed upon purchase price or such party's offer as accepted and approved by the Court, or until the conclusion of the Confirmation and Sale Hearing at which time such payment shall be returned if such party's offer is rejected, or at such later time as the parties may agree or as the Court may direct. Such deposit must be received no later than four (4) business days prior to the date scheduled by the Court for the Confirmation and Sale Hearing;

(b) All prospective purchasers shall be required to demonstrate to the Plan Proponent and the Court the ability and wherewithal to consummate the sale substantially in accordance with the terms set forth in the Plan. The purchase is not subject to any mortgage contingency.

(c) The auction shall be conducted openly at the United States Bankruptcy Court for the Southern District of New York in the courtroom of the Honorable Robert D. Drain. Each bidder shall be informed of the terms of the previous bid. Each bidder shall confirm at the auction that it has not engaged in any collusion with respect to the bidding or the sale.

(d) Absent irregularities in the conduct of the auction, or reasonable and material confusion during the bidding, the Court will not consider bids made after the auction has been closed.

(e) 6777 LLC, the Plan Proponent herein and secured creditor, its successors and assigns, shall have the right pursuant to 11 U.S.C. § 1129(b)(2)(A)(ii) and §

363(k), at the auction sale to bid at such sale, and, if 6777 LLC, its successors or assigns, purchases such property, such holder may offset such claim against the purchase price of such property.

(f) The Court will consider all higher and better offers for the Premises to be sold at the Confirmation and Sale Hearing. According to the Claims Register filed with the United States Bankruptcy Court for the Southern District of New York, the total of liens securing the premises is the approximate amount of $3,000,000.00. Therefore, the initial bid must be at least $50,000.00 higher and after that all incremental bids shall be in increments of $25,000.00. If 6777 LLC is not the Successful Bidder, it shall receive a $25,000.00 "break-up" fee.

(g) Immediately after the approval by the Court of a Confirmation and Sale Order, such successful bidder shall consummate the sale transaction close within ten (10) days of the date of the Confirmation and Sale Order.

(h) In the event the successful bidder fails to close, through no fault of the Debtor, The Debtor shall be permitted to consummate a sale with the next highest bidder as long as the next highest bidder complies with all terms and conditions of the Plan of Reorganization, without the necessity of a further order of the Court.

(i) Neither oral nor written offers made at the Confirmation and Sale Hearing may be withdrawn after they are made, and any entity's refusal or failure to purchase the Assets in accordance with its offer, after acceptance of same by the Debtor and the approval of the Court, shall entitle the Plan Proponent to retain any deposit tendered and apply it to its secured without limiting any of the rights the Debtor may have with regard to same.

(j) The Court shall have the right to amend, delete or otherwise change the terms and conditions of the sale prior to or at the Confirmation and Sale Hearing, which amendments, deletions or changes shall be announced at the Confirmation and Sale Hearing.

(k) The Court shall have the right to reject any offer deemed inadequate or insufficient or which he believes to be contrary to the best interests of the Debtor's estate and its creditors, or to adjourn the Confirmation and Sale Hearing, subject to the proposed purchaser's consent, to a later date.

(l) In the event the Debtor is unable for any reason to consummate the sale approved by the Court at the Confirmation and Sale Hearing, his sole liability

(m) Representations and Warranties. The representations and warranties of the Seller set forth in this Plan shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date (except to the extent such representations and warranties speak as of an earlier date).

(n) Agreements and Covenants. Each of the agreements and covenants of the Seller to be performed and complied with pursuant to this Plan prior to the Closing Date shall have been duly performed and complied with.

**Additional Sale Obligations**:

a) The Debtor shall turn over to the Successful Bidder all, cash in the DIP account, rents and other income obtained by it as of the date of the Confirmation and Sale Order within three {3} business days and any income that may thereafter come into possession of the Debtor within three {3} business days of receipt of same.

b) The Debtor, by its officers or managing agent, shall turnover to the Successful Bidder all of the assets of the Debtor, including but not limited to: the keys to the premises and all apartments; the original leases with all tenants; all security deposits of the tenants with the accounting records pertaining to said deposits; the books and records of the Debtor; any and all documents relating to the property, its physical plant, construction that has been performed on it, tenants and their rent records; records related to rent regulation; all original contracts; insurance policies and any claims that the Debtor may hold against any third party, including all documentation with the City of New York and any agency of same, relating to the payment of rent or use and occupancy. The Debtor shall execute and deliver to the Successful Bidder's counsel any such further documentation that is required to transfer title of any and all of the Debtor's property to the Successful Bidder or its nominee.

c) The Debtor is further directed and ordered, by its officers, to execute any and all documentation relating to the transfer of its real property to the Successful Bidder, or its nominee within seven (7) business days of delivery of same to its counsel. In the event that the Debtor's officers fail to execute the transfer documents or any other documents required under the Confirmation and Sale Order, the Successful Bidder's attorney, is authorized, designated and empowered to execute said documents on behalf of the Debtor. A copy of the Confirmation and Sale shall evidence said authority.

d) The Debtor shall not be permitted to enter into any new leases at rental amounts less than the present rents charged under existing leases.

to the Successful Bidder shall be limited to returning any deposit with interest, if any, actually earned thereon.

e) All filing officers (including all filing officers in the City of New York) shall accept for recording and to record any and all documents or instruments that are necessary to implement the Plan, including, but not limited to, those documents necessary to facilitate the closing of the proposed sale of the Debtor's Premises to the successful bidder without the payment of any Exempt Taxes.

## PART IX
## TREATMENT OF EXECUTORY CONTRACTS

Any and all executory contracts or leases of the Debtor that are not expressly assumed herein, or in the Order confirming the Plan, or by an Order of the Bankruptcy Court prior to the effective date or pursuant to a proceeding or motion commenced prior to the Consummation Date, are hereby rejected pursuant to Section 365 of the Bankruptcy Code. Any entity whose claim arises from rejection of an executory contract or lease shall, to the extent such claim becomes an allowed claim, have the rights of an unsecured creditor with respect thereto. Any entity who has a claim against the Debtor may file a claim with the Clerk of the Court and serve a copy of same upon the Debtor and Debtor's counsel within thirty (45) days following the Confirmation Date or order authorizing such rejection, whichever is earlier. If such claim is not filed within the specified time, it shall be forever barred from assertion against the Debtor or his property.

## PART X
## FULL AND FINAL SATISFACTION

All payments, distributions and transfers of cash or property under the Plan are in full and final satisfaction, settlement and release of all claims against, the Plan Proponent, its agents, professionals and employees of any nature whatsoever existing at the Confirmation Date. All Persons and Entities shall be precluded from asserting against the Plan Proponent, its agents and employees, or its respective assets, properties or interests in property, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefor were known or existed prior to the Confirmation Date regardless of whether a proof of Claim was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim is an Allowed Claim.

Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Persons or Entities who have held, hold or may hold Claims or any other debt or liability that is discharged, terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability that is terminated or cancelled pursuant to the Plan against the Plan Proponent or its agents, or its respective properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor's estate, the Plan Proponent, or its agents, or the respective properties or interest in properties, ( c) creating, perfecting, or enforcing any encumbrance of any kind against the Plan Proponent or its agents, or against the respective property or interest in property, and (d) except to

the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from or against the respective property or interest in property, with respect to any such Claim or other debt or liability that is discharged that is terminated or cancelled pursuant to the Plan in respect of: (i) any actions taken prior to Confirmation of the Plan; (ii) the Plan; (iii) the authorization for or the formulation, negotiation, confirmation or consummation of the Plan; (iv) distributions, payments or transfers made under and in accordance with the provisions of the Plan; or (v) acts performed pursuant to the Plan.

# PART XI
# METHOD FOR DETERMINATION OF ALLOWED CLAIMS

The Plan provides for payment to be made only to holders of "allowed" claims, in the various classes[1]. As to claims incurred prior to the filing date, there are three avenues by which such claims may become "allowed" claims entitled to payment under the Plan. First, if a claim is listed in Debtor's Chapter 11 schedules (previously filed with the Court and annexed hereto as Exhibit "B" for reference) it is automatically allowed unless those schedules denominate that particular claim as "contingent", "unliquidated", or "disputed", or unless an objection thereto is

---

[1] The term "allowed claims" is defined in the Plan as follows:

"1.4 "Allowed Claim" means, (1) any Claim listed on debtor's schedules as filed in connection with its reorganization case which is liquidated in amount and is not designated as contingent or disputed and/or, (2) any Claim against debtor, proof of which was filed on or before the bar date for filing claims against debtor's estate, against which filed claim no objection to the allowance thereof has been or is interposed, or as to any such objection there has been a final Order entered and/or (3) any claim against debtor which is reduced to writing, consented to by debtor and liquidated in amount, which writing has been approved by a final Order."

"Impairment of claims" is defined in the Plan as follows:

"1.31 "Impairment of Claims or Interest" - The classes of claims set forth hereafter are described as "impaired" or not "impaired". Impairment is defined in Section 1124 of the Code as follows:

Section 1124. Impairment of claims or interests
Except as provided in Section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan - -
(1)     leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest;
(2)     notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default - -
        (A)     cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
        (B)     reinstates the maturity of such claim or interest as such maturity existed before such default;
        ©       compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
        (D)     does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
(3)     provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to - -
        (A)     with respect to a claim, the allowed amount of such claim; or
        (B)     with respect to an interest, if applicable, the greater of - -
                (I)      any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or
                (ii)     any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder."

filed with the Court and served upon the claimant. If an objection is interposed, the validity and amount of the claim will be determined by the Bankruptcy Court, following a hearing.

The second method by which a claim may be allowed is by the filing of a "proof of claim" with the Bankruptcy Court. If the claim is not disputed or objected to, it is deemed allowed. Such filing is required in order to assert any claim not included in the schedules, and for any claim denominated therein as "contingent", "unliquidated", or "disputed".

The third manner in which a claim may be determined to be "allowed" is by Order of the Court, after the litigation of a filed objection (or by stipulation settling such litigation setting forth an agreed liquidated claim and which is thereafter "so ordered" by the Court).

# PART XII
# VOTING IMPAIRMENT, CONFIRMATION AND CRAMDOWN

A. Voting:

Claimants with allowed impaired claims are entitled to vote to accept or reject the Plan. A claimant who fails to vote to either accept or reject the Plan will not be included in the calculations regarding the acceptance or rejection of the Plan.

Classes which are not "impaired" under the Plan, pursuant to Section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan. However, said claimants may rebut this presumption. The proponent believes that Classes 4, 6 and 7 are impaired.

If the Court determines that any class is impaired then a ballot to be completed by the holders of Claims will be enclosed herewith. Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length. The Plan will be confirmed by the Bankruptcy Court and made binding upon all claimants if, with respect to all classes of claimants, the Plan is accepted by the holders of two-thirds (2/3) in amount and more than one half (½) in number of allowed claims in each such classes voting upon the plan.

B.   Confirmation Without Acceptance by All Impaired Classes, Cramdown.

Generally, if a Plan is not accepted by all impaired classes, it may nevertheless be confirmed by the Bankruptcy Court if (I) the Plan is accepted by at least one impaired class and it meets all of the other requirements of Section 1129(a) of the Bankruptcy Code; (ii) the Plan does not discriminate unfairly; and (iii) the Plan is fair and equitable to the rejecting classes. Such a finding would require a determination by the Bankruptcy Court that the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code, including that no holder of any claim or interest junior to the claims of the rejecting class is receiving or retaining any property or payment under the Plan solely on account of such claim or interests. This requirement is generally referred to as the "absolute priority rule".

The "cramdown" provisions for confirmation of a Plan despite the non-acceptance of one or more impaired classes of the claims or interest are set forth in Section 1129(b) of the Bankruptcy Code. Section 1129(b)(1) of the Bankruptcy Code states:

> "Notwithstanding section 510(1) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to the Plan, the Court, on request of the proponent of the Plan, shall confirm the Plan notwithstanding the requirements of such paragraph if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan."

The proponent does not represent that the "cramdown" provisions would allow the confirmation of the Debtor"s Plan. That determination should be made after a review of the information contained herein.

C. The Confirmation Hearing

The Bankruptcy Court will schedule a hearing to approve the Disclosure Statement and for Confirmation of the Plan ( the õHearingö). The Hearing will be held before United States Bankruptcy Judge Robert D. Drain at the United States Bankruptcy Court, Southern District of New York, White Plains, New York. The Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of such adjournment in open Court. At the Hearing, or at any adjourned hearing thereof, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of holders of claims and interests. The Bankruptcy Court will also receive and consider a certification of ballots prepared on behalf of the proponent concerning the results of the vote.

## PART XIII
## POTENTIAL AVOIDANCE AND OTHER SIMILAR CASES

The Debtor will hereafter conduct a review of such books and records, as are available, for the purpose of determining the estate's rights to the recovery of:

(a) fraudulent conveyances pursuant to Section 548 (fraudulent transfers and obligations) and Section 550 (transferee liability), or claims or actions under the Uniform Fraudulent Conveyance Law of New York State, and the other fraudulent conveyance laws extent in the State of New York;

(b) preferential payments, pursuant to Section 547 of the Bankruptcy Code, which includes a payment made (I) within ninety (90) days prior to the filing of the original petition for relief under the Bankruptcy Code (or one year in the case of an insider); (ii) that was for prior obligations of the Debtor, not paid within the time prescribed in the terms usually employed between the Debtor

15

and the Creditor receiving the payment; (iii) made while the Debtor was insolvent; (iv) which allowed the Creditor to receive more than it would have in a liquidation of the Debtor's estate;

(c) insider preferential payments, pursuant to Section 547 of the Bankruptcy Code, which includes a preferential payment made by an "insider" within one (1) year prior to the filing of the Petition, instead of ninety (90) days as in the case of all others[2].

# PART XIV
## DISCUSSION OF COMPARATIVE RECOVERIES

To determine what might be recovered by an unsecured (Class 5) creditor, in a Chapter 7 liquidation case, the following steps should be taken:

(i) determine the dollar amount that would be generated from the liquidation by forced sale of the debtor's assets by a Chapter 7 Trustee; and

(ii) subtract the balance due the secured creditors, the estimated costs of the liquidation (including the Chapter 7 trustee's fees and the fees of professionals employed by the Chapter 7 trustee), the unpaid expenses of the reorganization proceeding and other bankruptcy priority obligations (such as priority wage, union and tax obligations).

These and any other claims arising in the liquidation, or from the current reorganization proceedings, must be paid in full before any funds would be made available to pay unsecured creditors. The value of the distribution resulting from a liquidation (after subtracting the amounts described above) may then be compared with the recovery estimated to be forthcoming under the Plan.

In the event of a Chapter 7, the only asset to liquidate would be the real property located at 830 East 163rd Street, Bronx, New York. The Debtor has listed the market value of the Property as unknown. Taking into consideration the total amount due to 6777 LLC in connection with the Mortgage in the sum of $2,657,770.44 and the amounts due the various other secured creditors in the amount of $276,108.35, the liens are approximately $3,000,000.00. If this Property was sold by a Chapter 7 trustee, there would not be enough funds generated from the sale to satisfy all the mortgages and liens encumbering the Property. A sale of the Property would not generate surplus funds to be distributed to the unsecured creditors. Accordingly, in a liquidation, the unsecured creditors would not receive a distribution, but under this Plan, the

---

[7] The term "insider" is defined in Section 101(31) of the Bankruptcy Code as follows:

"(31) `insider' includes - -
    (B) if the debtor is a corporation - -
        (I)    director of the debtor
        (ii)   officer of the debtor
        (iii)  person in control of the debtor, ..."

unsecured creditors will receive a distribution up to 100%. There is a carve out in the amount of $_____ for payment of general unsecured claims from the Plan Proponent's secured claim. The Plan Proponent believes that the sale of the Debtor's assets under and auction sale is more likely to result in a return to unsecured creditors than a liquidation of the Debtor.

# PART XV
# TAX CONSEQUENCES

The Plan Proponent is not aware of any tax consequences that may result from the confirmation of this Plan. However, individual creditors may have a bad debt deduction to the extent that their claims are not paid in full. In addition, Insider creditors may have deductions based upon bad debt deductions or may have income tax due based upon the forgiveness of debt as it concerns their personal liability on certain of the Insider mortgages and notes. Moreover, their may be significant transfer tax liability on all of the prior equity owners as controlling interests in the debtor were repeatedly transferred for value without the payment of New York State and New York City Transfer taxes. Creditors and Equity Holders are instructed to consult their own tax advisors. The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and to certain holders of Claims .The following summary is based on the IRC, Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Plan Proponent has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary generally does not address foreign, state or local tax consequences of the Plan, nor does it address the U.S. federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, persons holding an equity interest as part of an integrated constructive sale or straddle, and investors in pass-through entities).
**Accordingly, the following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of a Claim.**

**IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims are hereby notified that: (A) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.**

## PART XVI
## UNCLAIMED DIVIDENDS

Except as otherwise provided herein, in the event any claimant fails to claim any cash within six (6) months from the date such cash is distributed, such claimant shall forfeit all rights thereof, and to any and all future payments, and thereafter the claim for which such cash was distributed shall be treated as a Disallowed Claim. In this regard, distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or, if no proof of claim is filed, on the schedules or amended schedules filed by the Debtor, or to such other address as may be designated by a claimant in a writing delivered to the Plan Proponents, with a copy to the Plan Proponentsøcounsel at least one week prior to the distribution. All unclaimed cash shall be redistributed with the next distribution, any excess shall vest in the Plan Proponent.

## PART XVII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of Debtor's case pursuant to and for the purposes set forth in 1127(b) of the Bankruptcy Code and, *inter alia*, for the following purposes:

(i)     To determine any and all objections to the allowance of claims or interests;

(ii)    To determine any and all applications for compensation and reimbursement of expenses for professional fees and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(iii)   To amend or modify the Plan to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or advisable to carry out the purposes and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

(iv)    To determine any and all controversies and disputes arising under or related to the Plan;

(v)     To construe and enforce any and all provisions of the Plan;

(vi) To determine any and all applications, motions, adversary proceedings and contested or litigated matters brought before the Bankruptcy Court concerning the administration of the estate, or its property;

(vii) To determine any and all controversies and disputes arising under or related to any settlement of an adversary proceeding or contested matter approved by the Bankruptcy Court, either before or after the Confirmation date.

(viii) To hear and determine adversary proceedings seeking the avoidance or recovery of preferential payments and/or fraudulent conveyances or seeking the recovery of money, assets or property of the estate;

(ix) To enter a final Order or decree in the Debtor's Chapter 11 case.

## PART XVIII
## EFFECT OF CONFIRMATION
## PURSUANT TO SECTION 1141 OF BANKRUPTCY CODE

Section 1141 of the Bankruptcy Code provides that the provisions of a confirmed chapter 11 plan bind the Debtor, equity security holders of the Debtor, creditors and certain other parties in interest, to the terms of the confirmed plan regardless of whether or not the claim or interest of such party is impaired under the Plan and whether or not such party accepted the Plan.

## PART XIX
## FINANCIAL INFORMATION

The Debtor has filed with the Bankruptcy Court monthly operating reports. The most current Monthly Operating Report is annexed hereto as Exhibit õDö. Subsequent Operating Reports may be examined in the office of the Clerk of the Bankruptcy Court, during normal business hours, or are available on line at the Courtøs Web Site through PACER.

## CONCLUSION

No representations concerning Debtor or the Plan are authorized other than as set forth in this Disclosure Statement. Any representation or inducements made to secure acceptances, other than those contained in this Statement, should not be relied upon by any claimants in arriving at their decision as to whether to accept or reject the Plan. The information contained in this Disclosure Statement has not been subject to a certified audit. The Plan Proponent is unable to warrant that the information contained herein is without any inaccuracy, although great effort has been made

to insure that the information set forth in this Disclosure Statement is true and accurate.

    Dated: Huntington, New York
    January __, 2010

                        Law Offices of Avrum J. Rosen, PLLC
                        Attorneys for 6777 LLC, Plan Proponent

    By:    <u>S/Avrum J. Rosen</u>
            Avrum J. Rosen
            (a member of the firm)
            38 New Street
            Huntington, NY 11743
            (631) 423-8527
            AJRLAW@aol.com

            6777 LLC
            Plan Proponent

            By:_s/Seth Miller_____
            Seth Miller, President